ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| JOSÉ A. OTERO MARRERO<br><br>Parte Peticionaria<br><br>V.<br><br>COMISIÓN APELATIVA DEL SERVICIO PÚBLICO REPRESENTADA POR SU PRESIDENTE LAUDELINO F. MULERO CLAS, MUNICIPIO DE CABO ROJO REPRESENTADO POR SU ALCALDE, HON. JORGE A. MORALES WISCOVITCH, MUNICIPIO DE MAYAGÜEZ REPRESENTADO POR SU ALCALDE HON. JORGE L. RAMOS RUIZ Y RICARDO E. RODRÍGUEZ GONZÁLEZ, EN SU CARÁCTER OFICIAL COMO COMISIONADO ASOCIADO DE LA COMISIÓN APELATIVA DEL SERVICIO PÚBLICO<br><br>Parte Recurrida | TA2025RE00004 | Revisión Judicial procedente de la Comisión Apelativa del Servicio Público<br><br>Caso Núm.: 2022-01-0210<br><br>Sobre:<br><br>*MANDAMUS* |

Panel integrado por su presidenta, la Juez Brignoni Mártir, el Juez Salgado Schwarz y la Juez Aldebol Mora.

Salgado Schwarz, Carlos G., Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico a 25 de septiembre de 2025.

Comparece el señor José A. Otero Marrero ("Sr. Otero" o "Peticionario") y mediante recurso de *Mandamus* nos solicita que le ordenemos a la Comisión Apelativa del Servicio Público ("Recurrida", "CASP" o "Agencia") celebrar una Vista Administrativa.

Por los fundamentos que exponemos a continuación, expedimos el auto de *mandamus* y ordenamos a la CASP

celebrar una Vista Administrativa en un término de cuarenta y cinco (45) días.

-I-

A continuación, exponemos los hechos pertinentes a la controversia de epígrafe. Según las alegaciones del Peticionario, desde el año 2012 trabajó como Policía Municipal en el Municipio de Mayagüez, particularmente como empleado de carrera[1]. En enero de 2021, el Peticionario le solicitó al Municipio de Mayagüez un traslado a la Policía Municipal del Municipio de Cabo Rojo[2]. Posteriormente, con fecha del 14 de octubre de 2021, el licenciado Costa Bellido, Director de la Oficina de Recursos Humanos del Municipio de Cabo Rojo, recibió una *Hoja de Trámite*[3] con relación a la entrega de documentos de entrevista del Sr. Otero. Como parte del trámite correspondiente, el 26 de octubre de 2021, el Sr. Otero entregó el equipo perteneciente al Municipio de Mayagüez.[4] A su vez, durante el periodo del 25 de octubre al 1ro de noviembre de 2021, el Municipio de Cabo Rojo le hizo entrega al Sr. Otero de las herramientas necesarias para desempeñarse como Policía Municipal[5]. Además, el Comisionado de la Policía Municipal de Cabo Rojo incluyó al Peticionario en la lista de turnos para la semana del 1 al 7 de noviembre de 2021.[6]

Así las cosas, el Peticionario alega que el 2 de noviembre de 2021 recibió una llamada del Comisionado del Municipio de Cabo Rojo indicándole que tenía que

---

[1] Véase Apelación Enmendada presentada ante la CASP, pág. 2.
[2] *Íd.*, pág. 2.
[3] *Íd.*, Anejo 5.
[4] *Íd.*, Anejo 1.
[5] *Íd.*, Anejo 2.
[6] *Íd.*, Anejo 3.

hacer entrega de su arma de fuego debido a que no había firmado el documento de traslado, por lo que no era empleado de dicho municipio.[7] Conforme a ello, el Peticionario entregó su arma de fuego[8] y, según alega, le indicaron que no fuera a trabajar los próximos turnos[9]. Posteriormente, el 1 de diciembre de 2021 le notificaron al Sr. Otero que no era empleado del Municipio de Cabo Rojo ya que el municipio había prescindido de sus servicios.[10] Sobre este particular, el Peticionario alega que nunca recibió una notificación escrita del Municipio de Cabo Rojo informándole dicha determinación[11].

Según surge del recurso apelativo, el Municipio de Mayagüez sostiene que el Peticionario dejó de ser empleado de ellos luego de aceptar el traslado al Municipio de Cabo Rojo[12]. Sin embargo, el Municipio de Cabo Rojo no lo reconoce como empleado tras alegar que el Peticionario nunca completó una serie de documentos que le fueron solicitados.[13]

Como consecuencia de lo anterior, el 10 de enero de 2022, el Sr. Otero presentó una *Apelación*[14] ante la CASP. Posteriormente, el 18 de enero de 2022 el Peticionario presentó una *Apelación enmendada*[15]. En esa ocasión, el Sr. Otero le solicitó a la CASP que le ordenara al Municipio de Cabo Rojo reconocer su traslado, lo restituyera a su puesto de carrera como

---

[7] *Íd.*, pág. 3.
[8] *Íd.*, Anejo 4.
[9] *Íd.*, págs. 3-4.
[10] *Íd.*, pág. 4.
[11] *Íd.*
[12] *Íd.*, Anejo 8.
[13] *Íd.*, Anejo 7.
[14] Véase Entrada #1 del expediente de Primera Instancia en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).
[15] *Íd.*, Entrada #3.

Policía Municipal o, en la alternativa, ordenara al Municipio de Mayagüez a la reinstalación inmediata como Policía Municipal. Luego de múltiples trámites procesales, el 27 de abril de 2022[16], el Comisionado Asociado, el Lcdo. Rodríguez González emitió una *Orden*[17] a fin de que las partes presentaran el Informe de Conferencia con Antelación a la Vista Pública. El 27 de junio de 2022, las partes presentaron el *Informe de Conferencia con Antelación a la Vista Administrativa*[18]. A pesar de que el caso quedó sometido para la Vista, la CASP ha guardado silencio sobre este asunto. Según las alegaciones del Sr. Otero, la parte peticionaria ha presentado múltiples mociones solicitando la celebración de la Vista en su fondo, sin embargo, no ha obtenido respuesta. Ante la inactividad de la CASP, el 26 de agosto de 2025, el Sr. Otero acudió ante nos mediante auto de *mandamus* y señaló que la Recurrida "*está obligada a celebrar una vista administrativa a tenor con los términos establecidos en el derecho procesal aplicable.*"[19] Así las cosas, el 2 de septiembre de 2025, la CASP presentó una *Moción en Solicitud de Desestimación por Academicidad*[20].

-II-

**A. Debido Proceso de Ley**

La Sección 7 del Artículo II de la Constitución de Puerto Rico le asegura a todo ciudadano que no será privado de su propiedad o libertad, sin un debido

---

[16] Notificada el 29 de abril de 2022.
[17] Véase recurso de *mandamus*, Anejo 3.
[18] *Íd.*, Entrada #5 del Apéndice.
[19] *Íd.*, pág. 5.
[20] Véase Entrada #5 del expediente del Tribunal de Apelaciones en SUMAC.

proceso de ley.[21] Esta garantía proviene de las Enmiendas V y XIV de la Constitución de los Estados Unidos de América. La cláusula del debido proceso de ley en la jurisdicción federal tiene como fin evitar que el Gobierno utilice sus poderes como un instrumento de subyugación.[22] También se implantó para impedir que dichas facultades sean manejadas de manera arbitraria e irrazonable.[23] Existen dos dimensiones de este principio cardinal: (1) la procesal y (2) la sustantiva.[24]

Tanto en la jurisdicción local como en la federal, la vertiente sustantiva del debido proceso de ley se enfoca en proteger los derechos fundamentales de los individuos.[25] Apoyado en lo anterior, se ha recalcado que el Estado no puede interferir con los intereses propietarios y libertarios de un individuo de manera irracional, injustificada o caprichosa. En su aspecto procesal, esta disposición le atribuye el deber al Estado de garantizarle a toda persona que en aquellas instancias en las que se pretenda intervenir con la libertad o propiedad de esta última, el proceso sea uno justo, equitativo e imparcial.[26]

Para que surta efecto la protección que brinda este derecho constitucional en su ámbito procesal, tiene que estar en peligro un interés individual ya sea libertario o propietario. El Tribunal Supremo de Puerto Rico señaló que una vez cumplido este requisito, corresponde determinar cuál es el procedimiento exigido

---

[21] 1 LPRA Art. II, Sec. 7.
[22] *Davidson v. Cannon*, 474 US 344, 348 (1986).
[23] *Daniels v. Williams*, 474 US 327, 331 (1986).
[24] *Rodríguez Rodríguez v. E.L.A.*, 130 DPR 562, 575 (1992).
[25] *Marina Ind., Inc. v. Brown Boveri Corp.*, 114 DPR 64, 81 (1983).
[26] *López Vives v. Policía de Puerto Rico*, 118 DPR 219, 231 (1987).

("*what process is due*")[27]*.* Dependiendo del contexto, "*diversas situaciones pueden requerir diferentes tipos de procedimientos, pero siempre persiste el requisito general de que el proceso gubernamental sea justo e imparcial.*"[28]

En armonía con lo anterior, en *Mathews v. Eldridge*, 424 US 319 (1976), el Tribunal Supremo de los Estados Unidos estableció los criterios que deben ser examinados a la hora de determinar el procedimiento adecuado para privarle a una persona de algún derecho de propiedad o libertad. Estos son los siguientes: "*(1) los intereses individuales afectados por la acción del gobierno; (2) el riesgo de una determinación errónea que prive a la persona del interés protegido mediante el proceso utilizado y el valor probable de garantías adicionales o distintas; y (3) el interés gubernamental protegido con la acción sumaria y la posibilidad de usar métodos alternos.*"[29]

Desde esta perspectiva, el debido proceso de ley exige que en todo procedimiento adversativo se cumplan ciertas formalidades, a saber: (1) la notificación adecuada de la reclamación instada; (2) que el proceso se lleve a cabo ante un juzgador imparcial; (3) la oportunidad de ser oído; (4) el derecho a contrainterrogar testigos y examinar la evidencia presentada en su contra; (5) estar asistido por un abogado, y (6) que la decisión sea basada en el expediente.[30] Ahora bien, aun cuando esta norma constitucional está cimentada en la protección de los

---

[27] *Rodríguez Rodríguez v. E.L.A.*, supra, pág. 578.
[28] *Íd.*
[29] *Rivera Rodríguez & Co. v. Lee Stowell*, etc. 133 DPR 881, 888 (1993).
[30] *Íd.*, pág. 889.

derechos fundamentales que ostenta toda persona en nuestra jurisdicción, su aplicación responde a consideraciones prácticas y circunstanciales.[31] De ahí que se disponga que el derecho a ser oído debe ser en un tiempo significativo y de una manera apropiada.[32]

## B. Deferencia administrativa

La Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico[33] ("LPAUG") autoriza la revisión judicial de las decisiones de las agencias administrativas. Es un principio establecido que los tribunales apelativos debemos otorgar amplia deferencia a las decisiones emitidas por las agencias administrativas, debido a que estas cuentan con vasta experiencia y pericia para atender los asuntos que le han sido delegados por la Asamblea Legislativa.[34] Por lo tanto, las determinaciones de las agencias suponen una presunción de legalidad y corrección que a los tribunales nos corresponde respetar, mientras la parte que las impugne no presente prueba suficiente para derrotarlas.[35] Sin embargo, dicha norma no es absoluta. A tales efectos, nuestro más alto foro ha enfatizado que no podemos imprimirle un sello de corrección a una determinación, so pretexto de deferencia a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho. El Tribunal Supremo

---

[31] *Domínguez Talavera v. Tribunal Superior*, 102 DPR 423, 428 (1974).
[32] *Mathews v. Eldridge*, supra, pág. 333.
[33] Ley Núm. 38 de 30 de junio de 2017, según enmendada.
[34] *Hernández Feliciano v. Municipio de Quebradillas*, 2023 TSPR 6, 211 DPR ___ (2023); *O.E.G. v. Martínez Giraud*, 2022 TSPR 93, 210 DPR ___ (2022); *Super Asphalt v. AFI y otro*, 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 126 (2019); *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018).
[35] *Íd.*; *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 215 (2012).

de Puerto Rico resumió las normas básicas en torno al alcance de la revisión judicial de la siguiente forma:

> [L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero ésta [sic] cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos, procede que se valide la interpretación que realizó la agencia administrativa recurrida.[36]

El criterio rector bajo el cual los tribunales deben revisar las decisiones administrativas es el criterio de razonabilidad.[37] Bajo este criterio, la revisión judicial se limita a dirimir si la agencia actuó de forma arbitraria o ilegal, o de manera tan irrazonable que su actuación constituya un abuso de discreción.[38]

Conforme a lo anterior, nuestro más alto foro ha expresado que el criterio administrativo no podrá prevalecer en aquellas instancias donde la interpretación estatutaria realizada por una agencia provoque un resultado incompatible o contrario al propósito para el cual fue aprobada la legislación y la política pública que promueve. Así, "*la deferencia judicial al expertise administrativo, concedido cuando las agencias interpretan la ley, tiene que ceder ante*

---

[36] *Íd.*; *Véase*, además, *Super Asphalt v. AFI y otro*, supra, a la pág. 819.
[37] *O.E.G. v. Martínez Giraud*, supra; *Super Asphalt v. AFI y otro*, supra, a la pág. 820; *Graciani Rodríguez v. Garaje Isla Verde*, supra, a la pág. 127.
[38] *Íd.*

*actuaciones que resulten irrazonables, ilegales o que conduzcan a la comisión de una injusticia.*"[39]

## C. Ley de Procedimiento Administrativo Uniforme

La Ley Núm. 38 de 30 de junio de 2017, según enmendada también conocida como Ley de Procedimiento Administrativo Uniforme ("LPAUG") establece un procedimiento uniforme de revisión judicial respecto a las determinaciones tomadas por una agencia de Gobierno al adoptar un reglamento o adjudicar un caso.[40] A tales efectos, la legislación define el término "Agencia" de la siguiente forma:

> Agencia – Significa cualquier junta, cuerpo, tribunal examinador, corporación pública, comisión, oficina independiente, división, administración, negociado, departamento, autoridad, funcionario, persona, entidad o cualquier instrumentalidad del Gobierno de Puerto Rico u organismo administrativo autorizado por ley a llevar a cabo funciones de reglamentar, investigar, o que pueda emitir una decisión, o con facultades para expedir licencias, certificados, permisos, concesiones, acreditaciones, privilegios, franquicias, acusar o adjudicar, excepto:

(1)   El Senado y la Cámara de Representantes de la Asamblea Legislativa.
(2)   La Rama Judicial.
(3)   La Oficina del Gobernador y todas sus oficinas adscritas exceptuando aquéllas [sic] en donde se haya expresado literalmente la aplicación de las disposiciones de esta Ley.
(4)   La Guardia Nacional de Puerto Rico
(5)   Los gobiernos municipales o sus entidades o corporaciones.
(6)   La Comisión Estatal de Elecciones.
(7)   El Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos.
(8)   La Junta Asesora del Departamento de Asuntos del Consumidor Sobre el Sistema de Clasificación de Programas de Televisión y juguetes Peligrosos.

---

[39] *O.E.G. v. Martínez Giraud*, supra, a la pág. 91.
[40] Véase Exposición de Motivos de la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, Ley Núm. 38-2017.

(9) La Comisión para Resolver Controversias sobre Pagos y Deudas entre Agencias Gubernamentales.[41]

Según la definición que provee la legislación, la CASP se considera una Agencia para todos los fines que establece la LPAUG. Como tal, tiene el deber de cumplir con todos los términos que allí se disponen. Referente a los procedimientos durante la Vista, la Sección 3.13 de la LPAUG dispone, en parte pertinente, que *"[t]odo caso sometido a un procedimiento adjudicativo ante una agencia deberá ser resuelto dentro de un término de seis (6) meses, desde su radicación, salvo en circunstancias excepcionales."*[42]

## D. Comisión Apelativa del Servicio Público

El Plan de Reorganización Núm. 2 de 26 de julio de 2010, según enmendado[43] (Plan de Reorganización Núm. 2-2010), estableció la Comisión Apelativa para el Servicio Público ("CASP"). Este es un organismo cuasi judicial en la Rama Ejecutiva que se especializa en asuntos obrero-patronales y del principio de mérito. Dicha Comisión atiende casos laborales, querellas y asuntos de administración de recursos humanos en cuanto a los empleados cobijados por la Ley Núm. 45 de 25 de febrero de 1998, según enmendada, conocida como *Ley de Relaciones del Trabajo para el Servicio Público de Puerto Rico*[44], y aquellos empleados cubiertos por la Ley Núm. 8 de 4 de febrero de 2017, según enmendada, conocida como *Ley para la Administración y*

---

[41] Véase Sección 1.3 de la Ley de Procedimiento Administrativo Uniforme de 2017, Ley Núm. 38-2017 (3 LPRA § 9602).
[42] Véase Sección 3.13 de la Ley de Procedimiento Administrativo Uniforme de 2017, Ley Núm. 38-2017 (3 LPRA § 9653).
[43] Plan de Reorganización de la Comisión Apelativa del Servicio Público.
[44] 3 LPRA § 1451 *et seq.*

*Transformación de los Recursos Humanos en el Gobierno de Puerto Rico[45].*

Entre las facultades, funciones y deberes de la CASP, se encuentran las siguientes: (1) aprobar la reglamentación necesaria para garantizar el cumplimiento del plan; (2) realizar las vistas públicas y privadas, reuniones, encuestas e investigaciones que sean necesarias y adecuadas; (3) atender toda querella o apelación que se presente oportunamente y que concierna a su jurisdicción y (4) asegurar la neutralidad de los funcionarios y empleados de la Comisión en todos sus procedimientos.[46] En esta misma línea, la referida ley define el término administrador individual como la agencia u organismo que forma parte del Sistema de Administración de Recursos Humanos y la autoridad nominadora como todo jefe de agencia con facultad legal para efectuar nombramientos en la agencia que dirige.[47]

Respecto a los casos o controversias que pueden ser atendidos por este foro cuasi-judicial, el Plan de Reorganización Núm. 2-2010 dispone que la CASP, quien ostenta el estatus de administrador individual, tendrá jurisdicción primaria exclusiva sobre las apelaciones surgidas como consecuencia de los administradores individuales y los municipios, en las siguientes instancias:

a). cuando un empleado, dentro del Sistema de Administración de los Recursos Humanos, no cubierto por la Ley Núm. 45-1998, según enmendada, conocida como la "Ley de Relaciones del Trabajo del Servicio Público", alegue que una acción o decisión

---

[45] 3 LPRA § 1469 et seq.
[46] 3A LPRA Ap. XIII, Art. 8.
[47] 3A LPRA Ap. XIII, Art. 3 (b) y (e).

le afecta o viola cualquier derecho que se le conceda en virtud de las disposiciones de la Ley 8-2017, según enmendada, la Ley 107-2020, según enmendada, conocida como "Código Municipal de puerto Rico", los reglamentos que se aprueben para instrumentar dichas leyes, o de los reglamentos adoptados por los Administradores Individuales para dar cumplimiento a la legislación y normativa aplicable;

b). cuando un ciudadano alegue que una acción o decisión le afecta su derecho a competir o ingresar en el Sistema de Administración de los Recursos Humanos, de conformidad al principio de mérito;

c). cuando un empleado irregular alegue que la autoridad nominadora se ha negado injustificadamente a realizar su conversión a empleado regular de carrera, según dispone la Ley Núm. 110 de 26 de junio de 1958, según enmendada, conocida como "Ley de Empleados Irregulares";

d). cuando un Administrador Individual alegue que una acción, omisión o decisión de la Oficina es contraria a las disposiciones generales de la Ley Núm. 184 de 3 de agosto de 2004, según enmendada, en las áreas esenciales al principio de mérito.

e). la Comisión tendrá jurisdicción sobre el personal docente y clasificado del Departamento de Educación y el personal civil de la Policía de Puerto Rico, que no estén sindicados bajo la Ley Núm. 45 de 25 de febrero de 1998, según enmendada;

f). la Comisión podrá tener jurisdicción apelativa voluntaria sobre los empleados no organizados sindicalmente de aquellas agencias excluidas de la aplicación de la Ley Núm. 184 de 3 de agosto de 2004, según enmendada, y las corporaciones públicas que operen como negocio privado que se sometan voluntariamente al proceso apelativo y adjudicativo de la Comisión. El procedimiento y costo para que puedan acogerse a esta jurisdicción se establecerá, mediante reglamento;

g). cualquier asunto proveniente u originado de la administración de los recursos humanos no cubierto en otras leyes o convenios colectivos.[48]

Por su parte, y en lo concerniente a la controversia de epígrafe, la Sección 4.2 del Reglamento Procesal de

---

[48] 3A LPRA Ap. XIII, Artículo 12.

la CASP dispone que: "*[e]n aquellas circunstancias donde existe controversia sobre hechos esenciales, la Comisión ordenará la celebración de una vista pública con citación de las partes*"[49].

**E. Mandamus**

El recurso de *mandamus* es un auto discrecional y altamente privilegiado cuyo propósito es ordenar a un funcionario público o a un tribunal de inferior jerarquía, al cumplimiento de algún acto o deber no discrecional que le ha sido impuesto por ley.[50] Ese acto tiene que formar parte de los deberes y atribuciones de quien es compelido, ya que el auto de *mandamus* no confiere nueva autoridad ni tampoco provee facultades adicionales.[51]

La doctrina establece que antes de presentar un recurso de *mandamus* es requisito que el peticionario le haya requerido al demandado el cumplimiento del deber ministerial que se le exige.[52] No obstante, esta condición cuenta con dos excepciones: primero, cuando es claro que el requerimiento sería uno inútil e infructuoso, pues hubiese sido denegado si se hubiera hecho; segundo, cuando el deber que se pretende exigir es uno que gira en torno a asuntos de gran interés y carácter público. De igual forma, no procede el *mandamus* cuando haya un recurso adecuado y eficaz en

---

[49] Reglamento Procesal de la Comisión Apelativa del Sistema de Administración de Recursos Humanos en el Servicio Público, Reglamento Núm. 7313, Departamento de Estado, 6 de marzo de 2007, pág. 16.

[50] Artículo 649 del Código de Enjuiciamiento Civil, 32 LPRA § 3421; véase, *Acevedo Vilá v. Aponte Hernández* 168 DPR 443, 454 (2006); *Báez Galib y otros v. C.E.E. II*, 152 DPR 382, 391-392 (2000).

[51] Artículo 649, supra.

[52] *Noriega v. Hernández Colón*, 135 DPR 406, 448-449 (1994).

el curso ordinario de la ley.[53] El propósito de este recurso no es reemplazar remedios legales, sino suplir la falta de ellos. Además, la naturaleza altamente privilegiada del recurso conlleva que el mismo no proceda como cuestión de derecho, sino que su expedición descanse en la sana discreción del tribunal.[54]

El auto de *mandamus* por su naturaleza privilegiada, sólo debe ser expedido luego de una sosegada y ponderada evaluación de las circunstancias que lo rodean y luego de que el tribunal quede convencido de que se cumplen con todos los requisitos que lo autorizan. Así lo ha reconocido el Tribunal Supremo:

> Para que deba expedirse un auto de *mandamus*, sin embargo, no es suficiente que el peticionario tenga un derecho claro a lo que solicita y que el demandado tenga la obligación correspondiente de permitir el ejercicio de ese derecho. Se trata de un auto "altamente privilegiado", según expresa la ley de su creación, 32 LPRA sec. 3421, y los tribunales tienen necesariamente que medir todas las circunstancias concurrentes, tanto al determinar si debe o no expedirse el auto como al fijar el contenido de la orden, una vez resuelta en la afirmativa la cuestión inicial. En otras palabras, el remedio no se concede ex debito justitiae y tan pronto se reconoce el derecho del peticionario, sino únicamente cuando el tribunal esté convencido de que se cumplirán propósitos de utilidad social e individual. Para esos fines, es indispensable estimar qué efectos tendrá la orden en el adecuado cumplimiento de las responsabilidades del funcionario afectado por ella y hasta qué punto habrá de beneficiar al solicitante. Procede, en síntesis, establecer el más fino equilibrio posible entre los diversos intereses en conflicto.[55]

---

[53] Artículo 651 del Código de Enjuiciamiento Civil, 32 LPRA § 3423; véase, *Álvarez de Choudens v. Tribunal Superior*, 100 DPR 235 (1975).
[54] *Báez Galib y otros*, supra, págs. 391-392 (2000).
[55] *Dávila v. Superintendente de Elecciones*, 82 DPR 264, 283-284 (1960).

-III-

En el presente caso el Peticionario nos solicita que se expida el auto de *mandamus* ordenándole a la CASP celebrar una vista administrativa. Veamos.

Es harto conocido en nuestro sistema de derecho que, la intervención judicial en asuntos de índole administrativa se limita a ciertas instancias en particular. A tales efectos, la deferencia que le deben los tribunales a las agencias cede si esta actuó de manera arbitraria o irrazonable.

Según las alegaciones del Sr. Otero, este se desempeñó como Policía Municipal en el Municipio de Mayagüez desde el año 2012 y en enero del año 2021 solicitó traslado para el Municipio de Cabo Rojo. Posteriormente, el Peticionario alega que recibió una llamada alertándole que, de no haber firmado los documentos de traslado, no sería considerado empleado del Municipio de Cabo Rojo. Luego de este incidente el Sr. Otero comenzó una serie de gestiones con personal de ambos municipios, a fin de aclarar su estatus como Policía Municipal, sin embargo, ninguno de los municipios lo reconoció como su empleado.

Inconforme con la situación, el 18 de enero de 2022, el Sr. Otero acudió ante la CASP mediante recurso de Apelación. En cumplimiento con las órdenes de la Agencia las partes presentaron su *Informe de Conferencia con Antelación a la Vista Pública* el 27 de junio de 2022 y desde ese momento se encuentran en espera del señalamiento de vista adjudicativa. Cabe señalar que, previo a la presentación del auto de *mandamus*, el Peticionario le solicitó a la Recurrida,

en múltiples ocasiones, que señalara una vista adjudicativa, solicitud sobre la cual la Agencia ha guardado silencio.

Nos parece irrazonable que tres años después de la presentación del *Informe de Conferencia con Antelación a Vista Pública* la Agencia no se haya expresado sobre el señalamiento de vista adjudicativa. Según alega la CASP en su Moción de Desestimación, al día siguiente de haber sido notificada del recurso de *mandamus* en el caso de epígrafe, les informó a las partes sobre el señalamiento de una Vista sobre el Estado de los Procedimientos para el 30 de septiembre de 2025. Dicho señalamiento no convierte la controversia ante nos en académica. La legislación y jurisprudencia aplicables al caso de autos establecen con claridad que la Agencia tiene un término de seis (6) meses para resolver el asunto ante sí, salvo circunstancias excepcionales. Es evidente que una vista sobre el estado de los procedimientos no pone fin a un litigio. Mas bien, su propósito es discutir los avances del caso y establecer un calendario con aquellos asuntos pendientes.

Ante tal escenario, el Peticionario alega que fue privado de su empleo sin el debido proceso de ley que garantiza nuestra Constitución. Del expediente de autos surge que existe controversia sobre hechos esenciales, lo que le impone a la Agencia el deber de celebrar una vista. Además, por tratarse de un asunto sobre el cual la Agencia tiene jurisdicción primaria exclusiva y ante la inacción de esta, el Peticionario se ha visto impedido de que se atienda su reclamo.

La Recurrida contaba con un periodo de seis (6) meses desde la radicación del pleito para resolver la controversia de epígrafe, ello salvo circunstancias excepcionales, las cuales no se han presentado en el caso de autos.

A tenor con lo anterior, expedimos el auto de *mandamus* y le ordenamos a la Comisión Apelativa del Servicio Público celebrar una Vista Adjudicativa en un término de cuarenta y cinco (45) días.

-IV-

Por los fundamentos que anteceden se declara *No Ha Lugar* la Moción de Desestimación presentada por la Recurrida, se expide el auto de *mandamus* y se ordena a la Comisión Apelativa del Servicio Público celebrar una Vista Administrativa dentro del término de cuarenta y cinco (45) días.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones